**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INTERCONTINENTAL INDUSTRIES CORPORATION, a California corporation, | No.   16-56601 |
| Plaintiff-Appellant, | D.C. No. 2:10-cv-04174-JAK-E |
| v. | |
| WUHAN STATE OWNED INDUSTRIAL HOLDINGS CO., LTD., a corporation registered under the law of People's Republic of China; HUBEI PROVINCE GOVERNMENT, an administrative division of the People's Republic of China; DOES, 1 through 20, inclusive, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted May 18, 2018
Pasadena, California

Before:  WARDLAW, NGUYEN, and OWENS, Circuit Judges.

Intercontinental Industries Corporation ("Intercontinental") appeals the

district court's dismissal of its action against Wuhan State Owned Industrial

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Holdings Co., Ltd. and Hubei Province for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1604, 1605(a)(2). We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's immunity determination de novo and its underlying factual findings for clear error, *see Barapind v. Gov't of Republic of India*, 844 F.3d 824, 828–29 (9th Cir. 2016), we affirm.

**1.** The commercial activity upon which Intercontinental's action is based took place in China. Intercontinental's claims concern defendants' alleged fraudulent inducement of, interference with, and breach of a contract that was to be performed entirely in China—regardless of where it was negotiated. *See OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) ("[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit."); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133 (9th Cir. 2012) ("[W]hile a foreign nation's contract negotiations, including a meeting, and telephone and wire communications, are commercial activity in the United States, they are insufficiently significant to meet [the commercial activity] exception."). Pursuant to the 2005 agreement, Intercontinental purchased a Chinese tool-making factory, acquired new land in Wuhan, built facilities and migrated production there, and began operating profitably under the new name Omikron. Defendants allegedly demanded an additional investment of $10 million, withdrew $21 million from the

2

factory's bank account, froze its accounts, and excluded its American managers from the facilities.[1] Therefore, the action was not "based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2) (clause one).

**2.** Defendants' alleged misrepresentations to Intercontinental in the United States did not concern "the *type* of actions by which a private party engages in 'trade and traffic or commerce,'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992), because a private party does not use political influence and authority to protect another party's investments and resolve disputes in its favor. Therefore, the action was not "based . . . upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2) (clause two).

**3.** Any connection between defendants' alleged breach of the 2005 agreement in China and Omikron's loss of potential contracts with third parties in the United States or defendants' payment to Intercontinental in the United States

---

[1] Some of defendants' alleged conduct, such as approving the necessary contracts and permits and threatening Intercontinental's president that he would be "border controlled" and imprisoned if Intercontinental did not agree to sell back the factory, did not involve commercial activity at all. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 362–63 (1993) (rejecting argument that "the Saudi Government 'often uses detention and torture to resolve commercial disputes'" as basis for the commercial activity exception because "the powers allegedly abused were those of police and penal officers" regardless of the state's commercial motivation).

pursuant to a subsequent agreement in 2008 was too "remote and attenuated" to have "direct effects" in the United States. *Terenkian*, 694 F.3d at 1139. Therefore, the action was not "based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere . . . that . . . causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2) (clause three).

**AFFIRMED.**